UNITED STATES of America,
Appellee,

v.

Nixon BERNADEL, Defendant–Appellant.

No. 06–3940–cr.

United States Court of Appeals,
Second Circuit.

April 25, 2007.

Susan Corkery, Assistant United States Attorney (Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, on the brief; Peter A. Norling, Assistant United States Attorney, of counsel), Brooklyn, NY, for Appellee.

Darrell B. Fields, Federal Defenders of New York, Inc., New York, NY, for Defendant–Appellant.

PRESENT: Hon. SONIA SOTOMAYOR, Hon. ROBERT A. KATZMANN, Circuit Judges, Hon. NANCY GERTNER, District Judge.*

### SUMMARY ORDER

Defendant-appellant Nixon Bernadel appeals from a July 18, 2006 judgment of the United States District Court for the Eastern District of New York (Dearie, J.) revoking his probation and sentencing him to ten months' imprisonment followed by a two-year term of supervised release after finding, by a preponderance of the evidence, that he had committed two violations of the terms of his probation: committing an assault in the second degree, in violation of New York Penal Law section 120.00–1; and failing to give his probation officer at least ten days' prior notice of a change of residence. We assume the parties' familiarity with the underlying facts and procedural history of the case.

■ Bernadel contends that the district court abused its discretion, *see United States v. Barth*, 899 F.2d 199, 202 (2d Cir.1990) (noting that probation revocations are reviewed for abuse of discretion), by relying on inadmissible hearsay testimony without first finding good cause to deny him the opportunity to confront the witnesses against him, *see* Fed.R.Crim.P. 32. 1(b)(2)(C) (providing that a person charged with violating the conditions of probation "is entitled to ... question any adverse witness unless the court determines that the interest of justice does not require the witness to appear"); *United States v. Williams*, 443 F.3d 35, 45 (2d Cir.2006) (noting that in a probation-revocation hearing, although "neither the Due Process Clause nor Rule 32.1 obliges the district court to perform a good-cause analysis with respect to a proffered out-of-court statement [that] is admissible under an established exception to the hearsay rule .... if the statement does not fall under such an exception, Rule 32.1 requires the court to determine whether good cause exists to deny the defendant the opportunity to confront the adverse witness" (internal quotation marks omitted)). We find no indication in the record that the district court accepted the government's claim of good cause not to call Bernadel's mother, Paula Cenatus, or other witnesses to testify regarding the assault incident. We also disagree with the government's contention that the district court made a finding of good cause with its

* The Honorable Nancy Gertner of the United States District Court for the District of Massa- chusetts, sitting by designation.

passing reference to a "classic pattern" of assault victims withdrawing charges against perpetrators. Because it is undisputed that the probation officer's testimony recounting Cenatus's statements was not admissible under any established hearsay exception, the district court erred in failing to make a finding of good cause before admitting the probation officer's testimony.

■ Moreover, we agree with Bernadel that the court's failure to make a finding of good cause was not harmless. *See United States v. Aspinall,* 389 F.3d 332, 346 (2d Cir.2004) ("[A] district court's failure to comply with the interest-of-justice-determination requirement of Rule 32.1(b)(2)(C) ... is subject to harmless-error analysis."), *abrogated on other grounds by United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), *as recognized in United States v. Fleming,* 397 F.3d 95 (2d Cir.2005). Had the court made the required finding, it is not at all clear that it would have reached the same result-namely, permitting the government to present the probation officer's testimony about Cenatus's account rather than calling Cenatus herself to testify. In undertaking that analysis, the district court would have been required to "balance, on the one hand, the defendant's interest in confronting the declarant, against, on the other hand, the government's reasons for not producing the witness and the reliability of the proffered hearsay." *Williams,* 443 F.3d at 45. The government's primary reason for not producing Cenatus was that, if it had asked her, she would have refused to testify because of her familial relationship, as indicated by her earlier refusal to press charges against Bernadel. With regard to the reliability of the proffered hearsay, the government claims that

if Cenatus herself had testified, she would have offered the same account that she told to the probation officer and would have been similarly believed by the court.

These assertions, however, are not backed by anything but speculation. Cenatus's "familial relationship" [1] did not prevent her from making a criminal-assault complaint against her son, and her refusal to "press charges" one year earlier would not necessarily have translated into a refusal to testify in a probation-revocation hearing, given both the passage of time and the nature of the proceedings. Furthermore, there are indications that if Cenatus had testified, her testimony might have been different than her statements to the probation officer or otherwise less credible than the probation officer's version of her account—as a result of, for example, her retraction of claims that Bernadel assaulted her on previous occasions and her failure to mention that he was seriously injured during the encounter. In other words, it is far from clear that the probation officer's account accurately reflected what Cenatus herself would have testified to and what the court would have concluded if it had heard Cenatus's live testimony.

The government concedes that the record does not support the district court's finding that Bernadel committed the assault specification because there is insufficient evidence that Bernadel inflicted physical injury, as required under New York Penal Law section 120.00–1. We cannot say that the district court, had it found that Bernadel committed only the change-of-address specification and not the assault specification, would necessarily have sentenced him to the same lengthy term of imprisonment. Moreover, al-

---

1. As Bernadel notes, because he was not raised by his mother, even assumptions about the effects of a "familial relationship" that are ordinarily warranted might not hold.

though the government contends that the evidence adduced at the hearing supports a harassment specification, the district court did not reach this issue, and it not clear that it would have imposed the same sentence had it found that Bernadel committed this specification rather than the one for assault.

█ Finally, although Bernadel challenges the sufficiency of the evidence supporting the district court's finding that he committed the change-of-address specification, the record shows that he failed to provide prior notice of his change of address. We note, however, that the district court did not explain why it sustained this specification despite dismissing the specification charging that Bernadel had failed to provide timely notice of his assault arrest, when the probation officer learned of both the change of address and the arrest in the course of her April 11, 2005 telephone conversation with Bernadel's girlfriend. This inconsistency may also affect the sentence the district court ultimately imposes.

For the foregoing reasons, the judgment of the district court is VACATED and the case is REMANDED for further proceedings consistent with this opinion.